UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**MILDRED CROWDER as Personal Representative**  **PLAINTIFF**
**of the ESTATE OF TIMOTHY JOHNSON, deceased**

V.          No. 3:18-CV-00131

**CITY OF MANILA, ARKANSAS,**          **DEFENDANTS**
**JARED CAMP, individually, and JACKIE HILL,**
**individually**

### BRIEF IN SUPORT OF DEFENDANTS' MOTION TO DISMISS

COMES NOW, Defendants, by and through their attorneys, John L. Wilkerson and Gabrielle Gibson, and for their Brief in Support of their Motion to Dismiss, state:

### INTRODUCTION

On the evening of July 28, 2015, Timothy Johnson, refusing to obey all officer commands, "took a few steps toward [Officer Jared] Camp while holding [a] knife to his waist and yelling and screaming for the officer to shoot him." *Complaint*, p. 2. As Officer Camp "took a few steps back" from the advancing, knife-wielding man, he fired three times. *Complaint,* p. 2. Mr. Johnson's mother, the Plaintiff, now asserts that Officer Camp violated the law when he used deadly force to stop her son's advance. Existing law, however, establishes the reasonableness of the use of deadly force when an officer is faced with a knife-wielding suspect. *See Estate of Morgan v. Cook*, 686 F.3d 494, 495 (8th Cir. 2012)*; City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1772 (2015); *Kisela v. Hughes*, 138. S. Ct. 1148 (2018); *Gardner v. Buerger*, 82 F.3d 248 (8th Cir. 1996). As for whether a reasonable accommodation existed, Officer Camp could do nothing further to reasonably accommodate Mr. Johnson's mental disability without putting his own life at risk.

1

With those cases in mind, even if Officer Camp had violated the law by using deadly force in this situation, Officer Camp and Chief Hill would be entitled to qualified immunity because it is not clearly established that shooting a man who is wielding a knife, refusing to obey commands, and quickly stepping towards an officer would violate the law. In fact, the converse is clearly established – Officer Camp's actions were lawful, inherently making the actions taken by Chief Hill and the City of Manila lawful, as well. For this reason, it becomes clear the Plaintiff has failed to state a claim against the Defendants, and her claims should be dismissed.

## STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim, "the complaint must include sufficient factual allegations to provide the grounds on which the claim rests." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The stated claim for relief must be "plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

While the Court must accept the factual allegations in the complaint as true and construe them in favor of the plaintiff, the Court must not "presume the truth of legal conclusions couched as factual allegations." *Id.*; *See also, Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("[T]he court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."). In short, "the pleading standard that Rule 8 announces

does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 555).

## STATEMENT OF THE CASE[1]

While the shooting of Mr. Johnson occurred in the evening of July 28, 2015, his interaction with police and emergency medical personnel ("EMTs") began earlier that day. *Complaint*, page 1. That morning Officer Camp and the EMTs responded to a 911 call that Mr. Johnson was lying "unconscious on the floor of his camper." *Id.* According to the Complaint, Kristi Greer, Mr. Johnson's estranged girl friend, found Mr. Johnson "unconscious, unresponsive, and appearing not to be breathing." *Id.* ¶ 23. When the EMTs arrived, they were able to revive Mr. Johnson "who told them that he was just trying to get attention from his girlfriend" – Mr. Johnson, according to the Complaint, had recently been rejected by Ms. Greer. *Id.* ¶ 19 & 26.

After reviving Mr. Johnson, Officer Camp and the EMTs left the scene; however, the EMTs left a trauma bag in Mr. Johnson's camper, so later that afternoon, Officer Camp accompanied the EMTs to retrieve that bag. *Id.* ¶ 27. When they arrived "to retrieve the bag . . . neither the EMTs nor [Officer] Camp had problems from him in their interactions with him." *Id.* ¶ 28.

"Later that evening at approximately 8pm, [Ms. Greer] knocked on Melinda White's door screaming that 'Tim has done it this time, he is dead.'" *Complaint*, ¶ 30. According to the Complaint, Mr. Johnson was found "lying in the camper doorway with a thick white plastic zip tie pulled snug around his neck. Timothy's face and body were

---

[1] The following facts are a recitation of the allegations from the Plaintiff's Complaint and presumed true for purposes of the Defendants' Motion to Dismiss.

3

purple and he was unresponsive." *Id.* ¶ 31. Ms. White called 911, and shortly thereafter, Officer Camp "received a call from dispatch that the EMTs had been called back to the camper for a man who had tried to hang himself." *Id.* ¶ 35.

Instead of finding Mr. Johnson unresponsive from a suicide attempt, Officer Camp arrived back at the scene to find Mr. Johnson outside the camper "holding a knife in his right hand up to his neck." *Id.* ¶ 36. "[Officer] Camp drew his service revolver and told [Mr. Johnson] to put the knife down and they would talk through it." *Id.* ¶ 37. Mr. Johnson "told [Officer] Camp that he was not going to put the knife down, but that he would cut himself, that he would do it." *Id.* ¶ 39.

As Officer Camp attempted to de-escalate the situation and help Mr. Johnson, Ms. Greer "remained in the yard talking and pleading with [Mr. Johnson]." *Complaint*, ¶ 50. "She heard [Officer] Camp tell [Mr. Johnson] 'I'm not here to arrest you; you've got people worried about you; and put the knife down.'" *Id.* ¶ 51. Mr. Johnson still did not put the knife down, and instead "took a couple of steps toward [Officer] Camp." *Id.* ¶ 51. As Mr. Johnson took those steps forward, Officer Camp "told [Mr. Johnson] again to put the knife down and that he, [Officer] Camp, would shoot [Mr. Johnson] if he did not stop." *Id.* ¶ 40.

At or around this time, Mr. Johnson and Officer Camp "saw Chief [Jackie] Hill's car pulling into the driveway." *Id.* ¶ 41. Mr. Johnson then said that "if anyone else showed up, he was going to cut himself." *Id.* ¶ 42. Officer Camp told Mr. Johnson that "it was just Jackie, Chief Hill, but to put the knife down because he wanted to help him." *Complaint*, ¶ 43. Rather than put the knife down and get help, Mr. Johnson "brought the knife down to his waist, slapped his forehead and said, 'You wanna help me? Here, help me,' and took two quick steps toward Camp." *Id.* ¶ 44. Chief Hill saw Mr. Johnson

4

"take a few quick steps toward Camp," saw Officer Camp "taking a few steps back," and saw Officer Camp fire his gun. *Id.* ¶ 48. Ms. Greer saw much of the same thing: she heard Mr. Johnson "yell at [Officer] Camp, 'shoot me, that's what I want you to do'; and as he took a couple more steps screaming at [Officer] Camp, 'Come on, I want you to do it", [Officer] Camp fired his gun." *Id.* ¶ 52.

## ANALYSIS

### I. Officer Camp's Use of Force Was Constitutional Within the Meaning of the Fourth Amendment.

As with every use of force case, the "use of force violates the Fourth Amendment when it is objectively unreasonable, given the facts and circumstances of the particular case, as 'judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Chambers v. Pennycook*, 641 F.3d 898, 905-06 (8th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 396-97 (1989)). As such, the determination of whether the force used was reasonable requires a case-specific balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 906 (quoting *Graham*, 490 U.S. at 396).

A court gives "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *McKenney v. Harrison*, 635 F.3d 354, 359 (8th Cir. 2011) (quoting *Graham*, 490 U.S. at 396). "The use of deadly force is not constitutionally unreasonable if an officer 'has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others." *Cook*, 686 F.3d at

497 (quoting *Moore v. Indehar*, 514 F.3d 756, 762 (8th Cir. 2008)) *See also Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

By alleging in her complaint that Mr. Johnson "took a few steps toward [Officer] Camp while holding the knife to his waist and yelling and screaming for the officer to shoot him," the Plaintiff is alleging that Mr. Johnson was intent on committing 'suicide by cop.'[2] *Complaint*, p. 2. And, by bringing this suit, the Plaintiff is necessarily asserting that by using deadly force, Officer Camp violated the Fourth Amendment because Mr. Johnson's only goal was to harm himself; thus, there was no probable cause to believe that Mr. Johnson posed "a threat of serious physical harm, either to [Officer Camp] or others." *Cook*, 686 F.3d at 497 (quoting *Moore v. Indehar*, 514 F.3d 756, 762 (8th Cir. 2008)). Although the Eighth Circuit has not addressed this issue directly, the Ninth Circuit has held, "[t]he fact that [Mr. Johnson] was intent on 'suicide by cop' did not mean that the officers had to endanger their own lives by allowing [him] to continue in his dangerous course of conduct." *Lal v. California*, 746 F.3d 1112, 1117 (9th Cir. 2014).

On the other hand, even if Mr. Johnson was not attempting 'suicide by cop,' he posed an immediate threat of serious bodily injury to Officer Camp such that Officer Camp's use of force was lawful. Here, the allegations made in the Complaint establish that Officer Camp's use of deadly force was objectively reasonable. While the Plaintiff casually alleges that the situation facing Officer Camp "was not a rapidly evolving one,"

---

[2] "A form of suicide in which the suicidal person intentionally engages in life-threatening behavior to induce a police officer to shoot the person. Frequently, the decedent attacks the officer or otherwise threatens the officer's life, but occasionally a third person's life is at risk. A suicide-by-cop is distinguished from other police shootings by three elements. The person must (1) evince an intent to die; (2) consciously understand the finality of the act; and (3) confront a law enforcement official with behavior so extreme that it compels that officer to act with deadly force". SUICIDE, Black's Law Dictionary (10th ed. 2014).

the facts establish otherwise. ". . . [P]olice officers are often forced to make split-second decisions—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 397. Officer Camp responded to "a man who had tried to hang himself;" however, when he arrived, he found Mr. Johnson with a knife to his neck. *Complaint,* ¶¶ 35-36. By bringing the knife from his neck to his waist and quickly advancing on Officer Camp while screaming and yelling, Mr. Johnson gave Officer Camp "probable cause to believe that [he] pose[d] a threat of serious physical harm, either to the officer or others." *Cook, supra.*

These final movements gave Officer Camp, as they would have given any reasonable officer, probable cause to believe that Mr. Johnson posed a threat of serious physical harm or death at the moment of the shooting– a knife wound is certainly serious and/or deadly. And, it is this moment that is most important when determining the reasonableness of the shooting. "The Court's use of the phrases "at the moment" and "split-second judgment" are strong indicia that the reasonableness inquiry extends only to those facts known to the officer at the precise moment the officers effectuate the seizure." *Schulz v. Long*, 44 F.3d 643, 648 (8th Cir. 1995).

In *Estate of Morgan v. Cook*, the most factually similar case, the Eighth Circuit held that a similar situation to the one here established the reasonableness of an officer's use of force. *Cook*, 686 F.3d at 495. In *Cook*, Officers John Cook and John Comfort were dispatched to a domestic disturbance at the home of David Morgan. *Id.* When they arrived, the officers encountered Mr. Morgan holding a knife in his right hand. *Id.* at 496. Like Officer Camp, Officer Cook drew his gun, pointed it at the man, and ordered Morgan to drop the knife. *Id.* Like Mr. Johnson, Morgan refused. *Id.* Instead, Morgan put the

7

knife to his side and then "raised his right leg as if to take a step in the officer's direction." *Id.* In response, Officer Cook fired his gun, striking and killing Morgan. *Cook*, 686 F.3d at 496. The Eight Circuit held Officer Cook's conduct reasonable because the man was holding a knife, was only a short distance away, and failed to comply with the officer's orders to drop the knife. *Id.* at 497.

Here, the threat Mr. Johnson posed to Officer Camp's safety is much more pronounced than that in *Cook*. Rather than merely "rais[ing] his right leg *as if* to take a step in [Officer Camp's] direction," Mr. Johnson twice took multiple steps toward Officer Camp – and did so quickly – each time with the knife by his side. *Complaint* ¶¶ 44-48; 51-52. While the Plaintiff will note that prior to taking these steps Mr. Johnson had the knife to his neck, the fact that Mr. Johnson took the knife from his neck and dropped it to his side before quickly stepping toward Officer Camp provides more indication of the tense, uncertain, and rapidly evolving nature of this encounter. Furthermore, in *Cook*, the court held that it was sufficient for the officer to tell the man to drop the knife several times instead of warning the man that deadly force would be used, which is required where feasible. 686 F.3d at 497-98. Here, not only did Officer Camp tell Mr. Johnson to drop the knife several times, Officer Camp also warned Mr. Johnson that he would shoot if Mr. Johnson did not stop stepping towards him. *Complaint* ¶ 40.

Again, regardless of Mr. Johnson's intentions in taking two quick steps towards Officer Camp with a knife in his hand, a reasonable officer would have probable cause to believe Mr. Johnson posed a threat of serious injury or death. For that reason, the Plaintiff can state no claim for a Fourth Amendment violation. This is so "[e]ven if [Mr. Johnson] was suffering from mental illness or other impairment[;] the relevant inquiry

8

is whether [he] posed a threat, not what prompted [his] threatening conduct." *Frederick v. Motsinger*, 873 F.3d 641, 647 (8th Cir. 2017), *see Cook*, 686 F.3d at 498 (intoxication); *Hayek v. City of St. Paul*, 488 F.3d 1049, 1055 (8th Cir. 2007) (mental illness); *Hassan v. City of Minneapolis*, 489 F.3d 914, 919 (8th Cir. 2007) (mental illness); *Sanders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007) (mental illness).

> **II.    The Plaintiff's ADA Claim Fails as Mr. Johnson Posed a Risk to Officer Camp's Safety and Thus No Reasonable Accommodation Existed.**

Speaking of Mr. Johnson's alleged mental illness, the situation facing Officer Camp allowed no opportunity to provide a reasonable accommodation to Mr. Johnson. As set out above, this situation was "tense, uncertain, and rapidly evolving". *Graham*, 490 U.S. at 397. And, in these types of situations, courts "will not second guess [an officer's] judgments, where . . . an officer is presented with exigent or unexpected circumstances." *De Boise v. Taser Intern, Co.*, 760 F.3d 892, 899 (8th Cir. 2014) (quoting *Bahl v. Cnty of Ramsey*, 695 F.3d 778, 784–85 (8th Cir. 2012). For that reason, as set forth in more detail below, the Plaintiff's ADA claim[3] fails.

To prevail on an American with Disabilities Act ("ADA") claim, a plaintiff must demonstrate "that he is a qualified individual with a disability denied participation in, or the benefits of, the services, programs, or activities of a public entity because of his disability." *De Boise*, 760 F.3d at 899 (quoting *Gorman v. Bartch,* 152 F.3d 907, 912 (8th Cir. 1998)). When deciding whether a police officer reasonably accommodated a qualified

---

[3] Despite the slightly different language, the Rehabilitation Act of 1973 adopts the standards applied under the ADA to determine whether a violation of the former has occurred. 29 U.S.C.A. § 794(d); *Peebles v. Potter*, 354 F.3d 761, 765 (8th Cir. 2004). Thus, the analysis is the same, and the Defendants are entitled to a dismissal as to the Plaintiff's Section 504 of the Rehabilitation Act of 1973 claim for the same reasons a dismissal is appropriate for the Plaintiff's ADA claim. Therefore, the Plaintiff's claims that the Defendants violated the ADA and Section 504 of the Rehab Act should be dismissed.

individual with a disability, the inquiry is "highly fact-specific and varies depending on the circumstances of each case, including the exigent circumstances presented by criminal activity and safety concerns," *Id.* (quoting *Bahl,* 695 F.3d at 784–85). Furthermore, when facing rapid and dangerous circumstances, the Eighth Circuit has held that officers do not have "to hesitate to consider other possible actions in the course of making such split-second decisions." *De Boise*, 760 F.3d at 899 (quoting *Hainze v. Richards*, 207 F.3d 795, 801–02 (5th Cir. 2000)) ("Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life.").

Here, Officer Camp was faced with an unstable, screaming, and knife-wielding man who refused to obey multiple commands to drop the knife. *Complaint* ¶ 35, 36, 40. Mr. Johnson posed an immediate threat of serious physical injury or death to Officer Camp, irrespective of Mr. Johnson's disability. "Knowledge of a person's disability simply cannot foreclose officers from protecting themselves, the disabled person, and the general public when faced with threatening conduct by the disabled individual." *Hayek v. City of St. Paul,* 488 F.3d 1049, 1055 (8th Cir. 2007) (quoting *Bates ex rel. Johns v. Chesterfield Cnty., Va.*, 216 F.3d 367, 372 (4th Cir. 2000)).

Officer Camp commanded Mr. Johnson to put down the knife multiple times, warned Mr. Johnson that he would shoot if he did not stop, and attempted to keep distance between them for as long as possible while Mr. Johnson repeatedly advanced toward Officer Camp. Once Mr. Johnson brought the knife down from his throat and took those quick steps towards Officer Camp, any mental illness Mr. Johnson suffered became

secondary to the knife he had in his hand and the threat he posed to Officer Camp. At that moment, there was no other reasonable accommodation that Officer Camp could have provided to Mr. Johnson. "Even if [he] were mentally ill, and the officers knew it, [his] mental state does not change the fact that he posed a deadly threat to the officers." *Hayek v. City of St. Paul,* 488 F.3d 1049, 1055

The Plaintiff fails to assert what potential accommodation existed that Officer Camp didn't already take. Surely, the Plaintiff would not argue that (1) Officer Camp lower his gun and allow Mr. Johnson to stab him, or (2) walk away from the scene altogether. Obviously, there can be no serious argument that either of those options would be a reasonable accommodation considering the exigent circumstances that Officer Camp was faced. First, a law enforcement officer is not required to retreat before using deadly physical force in self-defense. A.C.A. § 5-2-607(b)(1)(B)(iii). Furthermore, Officer Camp could not simply leave the scene and abandon Ms. Greer with Mr. Johnson armed with a knife while yelling and screaming nearby. *Hayek, supra.* ("The officers reasonably feared William would use the sword to hurt himself or others. The officers could not leave the scene and abandon Hayek with William.").

As *De Boise* explained, the "use of force" on Mr. Johnson was "not by reason of [Johnson's] disability, but because of [his] objectively verifiable misconduct," which in this case involved Mr. Johnson screaming while quickly stepping toward Officer Camp with a knife. *De Boise*, 760 F.3d at 899 (quoting *Bates,* 216 F.3d at 373). For that reason, the Plaintiff has failed to state a claim, and her ADA claim against the Defendants should be dismissed.

### III. The Defendants are Entitled to Qualified Immunity.

"Qualified immunity shields government officials from the burdens of litigation as well as from judgments, unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (quoting *Harlow v. Fitzgerald*, 475 U.S. 800, 818 (1982)).

A constitutional right is not clearly established unless every reasonable officer would know that the action taken violated the right at issue. *Id.* at 2083. "Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 138. S. Ct. 1148, 1153 (2018) (quoting *Mullenix v. Luna,* 136 S. Ct. 305, 309 (2015)).

Here, Officer Camp is entitled to qualified immunity because the use of force was neither a violation of a clearly established constitutional right possessed by the Plaintiff or Mr. Johnson, nor was it objectively unreasonable in light of the totality of the circumstances. Furthermore, Officer Camp is entitled to qualified immunity because there was not a violation of Mr. Johnson's statutory rights, specifically the ADA. Under these circumstances, there was not a reasonable accommodation for Mr. Johnson's disability other than the actions that Officer Camp already took. Additionally, Chief Hill is entitled to qualified immunity because Chief Hill did not have a duty to intervene during Officer Camp's use of objectively reasonable force, and it is not clearly established that Chief Hill's actions or inaction would violate a clearly established constitutional or statutory right.

Even assuming *arguendo* that the Defendants violated any of the Plaintiff's or Mr. Johnson's rights, the Plaintiff cannot show that the law was clearly established at the time of the violation, such that *every* reasonable officer in the Defendants' position would know that their conduct violated such rights. There is no binding authority from the Eighth Circuit or the Supreme Court of the United State holding, at the appropriate level of specificity, that an objectively reasonable officer in Officer Camp's position would violate the Constitution or a statute by using deadly force under these circumstances. *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014). In fact, Supreme Court and Eighth Circuit rulings on the issue seem to establish that qualified immunity should be granted because it is clearly established that the Defendants did *not* violate Plaintiff's or Mr. Johnson's rights.

In *Kisela v. Hughes,* the Supreme Court ruled that the Defendant was entitled to qualified immunity because it was not clear that it was objectively unreasonable for an officer to shoot a woman who was armed with a knife, continued to ignore demands to put the knife down, and was in close proximity to the officer. 138 S.Ct. at 1154. In 2015, the Supreme Court held that shooting a woman who threatened officers with a knife was objectively reasonable even considering her mental illness. *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1772 (2015). The Eighth Circuit, in *Frederick v. Motsinger,* agreed that the officer's "use of deadly force against a suspect who was charging a fellow officer with a knife raised in a stabbing position" was objectively reasonable. 873 F.3d 641, 646 (8th Cir. 2017). And, again, the Eighth Circuit's holding in *Estate of Morgan v. Cook* establishes, too, that a reasonable officer faced with Officer Camp's situation would not know that using deadly force would violate a clearly

established right. Therefore, Officer Camp and Chief Hill are entitled to qualified immunity in their individual capacities, and the Plaintiff's claims against them should be dismissed.

### IV. Because Officer Camp Committed No Violation, the Claims Against the City of Manilla and Chief Jackie Hill Should Be Dismissed, As Well.

Because no constitutional violation occurred, no claim can be stated against the City of Manilla or Chief Hill for failure to train and supervise. *See Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 673 (8th Cir. 2007). Therefore, the claims against the City of Manila and Chief Hill should be dismissed.

### V. The Plaintiff's Fourteenth Amendment Claim is Misplaced and Should Be Dismissed.

As for the Plaintiff's Fourteenth Amendment claim, it is not cognizable because her constitutional protection for Officer Camp's actions are found in the Fourth Amendment. Where a particular Amendment "'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the mere generalized notion of "substantive due process," must be the guide for analyzing' such a claim." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham*, 490 U.S. at 395. Here, the Plaintiff's excessive force claim is a Fourth Amendment claim and is properly analyzed under that Amendment. *Graham, supra*.

### VI. For All the Reasons Set Forth Above, the Plaintiff's State Law Claims Fail.

First, it must be noted that when construing the Arkansas Civil Rights Act ("ACRA"), "a court may look for guidance to state and federal decisions interpreting the Civil Rights Act of 1871, as amended and codified in 42 U.S.C. § 1983." Ark. Code Ann. §

16–123–105.  Thus, courts analyze ACRA claims under the same rubric of an analogous federal law claim. *Island v. Buena Vista Resort*, 352 Ark. 548, 556-57, 103 S.W.3d 671, 675 (2003).  Thus, for all the reasons stated above, the Plaintiff's ACRA claims fail. Furthermore, Arkansas law permits a law enforcement officer to employ deadly force when he or she "reasonably believes that it is necessary . . . to defend himself or a third person from what he reasonably believes to be the use or imminent use of deadly physical force. Ark. Code Ann. § 5-2-610(b); s*ee also Crouch v. Richards*, 212 Ark. 980, 208 S.W.2d 460 (1958).  Therefore, the Defendants are entitled to a dismissal of the state law tort claims that Plaintiff alleges by and through the Arkansas Civil Rights Act. Ark. Code Ann. § 16-123-101.

## CONCLUSION

Screaming with a knife in his hand, Mr. Johnson took two quick steps toward Officer Camp who stood nearby. The Plaintiff alleges that Officer Camp's use of deadly force violated the Fourth Amendment and the Americans with Disabilities Act.  For the reasons stated above, neither are true. Officer Camp's actions were objectively reasonable considering the immediate danger Mr. Johnson posed. Based on the facts alleged in the Complaint, the Plaintiff has failed to state a claim upon which relief can be granted.

WHEREFORE, the Defendants respectfully request that this Court dismiss the Complaint, and for all other just and proper relief to which the Defendants are entitled.

Respectfully submitted,

JARED CAMP and JACKIE HILL, each in their individual capacities, and THE CITY OF MANILA, ARKANSAS, Defendants

By: /s/ JOHN L. WILKERSON, ABA #2008046
Attorney at Law
PO Box 38
North Little Rock, AR 72115
Tel: (501) 978-6136
Fax: (501) 978-6567
jwilkerson@arml.org

/s/ GABRIELLE GIBSON, ABA #2018113
Attorney at Law
PO Box 38
North Little Rock, AR 72115
Tel: (501) 374-3484 ext. 137
Fax: (501) 537-7258
ggibson@arml.org

**CERTIFICATE OF SERVICE**

I, John L. Wilkerson, hereby certify that on this 18th day of September 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notification of such filing to all participating counsel of record listed below; and I further certify that I have mailed the document to all non-CM/ECF participants listed below, via U.S. Mail, Postage Prepaid:

Morris W. Thompson
Morris W. Thompson Law Firm, P.A.
P.O. Box 662
Little Rock, AR 72203

/s/ JOHN L. WILKERSON, ABA #2008046